UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KURT E. RENT, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:22-cv-02075-JMS-MG |
| | ) | |
| MANHATTAN LIFE ASSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| *Defendant*. | ) | |

## ORDER

Plaintiff Kurt Rent was insured under a Cancer and Specified Disease Insurance Policy ("the Policy") issued by Defendant Manhattan Life Assurance Company of America ("Manhattan Life"). While insured under the Policy, Mr. Rent was diagnosed with cancer and submitted claims for benefits related to his cancer treatment. Manhattan Life paid benefits for some of Mr. Rent's claims but denied others on the ground that Mr. Rent did not timely file those claims under the terms of the Policy. Mr. Rent subsequently sued Manhattan Life, seeking a declaratory judgment regarding the rights and duties of the parties as they relate to the Policy and alleging claims for breach of contract and breach of the duty of good faith and fair dealing. Manhattan Life has filed a Motion for Summary Judgment and a Motion for Oral Argument and Hearing regarding the Motion for Summary Judgment. [Filing No. 51; Filing No. 59.] The motions are now ripe for the Court's consideration.

## I.
### MOTION FOR ORAL ARGUMENT

Manhattan Life filed a Motion for Oral Argument and Hearing. [Filing No. 59.] The parties' briefs afforded the Court a more than adequate basis on which to rule on Manhattan Life's

Motion for Summary Judgment without the assistance of oral argument.  The Court, therefore, **DENIES** Manhattan Life's Motion for Oral Argument and Hearing, [Filing No. 59].

## II.
### SUMMARY JUDGMENT STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003).  "'Summary judgment is not a time to be coy.'"  *King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (quoting *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017)).  Rather, at the summary judgment stage, "[t]he parties are required to put their evidentiary cards on the table."  *Sommerfield*, 863 F.3d at 649.

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

Each fact asserted in support of or in opposition to a motion for summary judgment must be supported by "a citation to a discovery response, a deposition, an affidavit, or other admissible evidence."  S.D. Ind. L.R. 56-1(e).  And each "citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence."  *Id.*  The Court need only consider the cited materials and need not "scour the record"

for evidence that is potentially relevant. *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 572-73 (7th Cir. 2017) (quotations omitted); *see also* Fed. R. Civ. P. 56(c)(3); S.D. Ind. L.R. 56-1(h). Where a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the Court may consider the fact undisputed for purposes of the summary judgment motion. Fed. R. Civ. P. 56(e)(2).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standard detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A.   The Policy

The Policy covers certain benefits related to the treatment of cancer and specified diseases as defined by the Policy. [Filing No. 51-2.] Benefits under the Policy are to be paid directly to the insured and may be used as the insured sees fit. [Filing No. 51-2 at 11; *see* Filing No. 51-4 at 31.] The Policy provides the following language regarding notice of claims and proof of loss:

## VII. CLAIMS

**NOTICE OF CLAIM:** Written notice of claim must be given to us within 20 days after a covered loss starts or as soon as reasonably possible.  The notice must be given to us at our home office.  Notice should include your name and policy number.

* * *

**PROOFS OF LOSS:** Written proof of loss must be given to us within 90 days after such loss.  If it was not reasonably possible to give written proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible.  In any event, the proof required must be given no later than one year from the time specified unless the claimant was legally incapacitated.

[Filing No. 51-2 at 11.]  There is no current issue as to whether Mr. Rent is insured under the Policy.  [*See* Filing No. 54-1 at 44.]  He is insured.  [*See* Filing No. 54-1 at 44.]

### B.   Manhattan Life Trains Its Claims Handlers on the Duty of Good Faith and Fair Dealing

As a part of annual training, Manhattan Life trains its claim handlers on the duty of good faith and fair dealing.  [Filing No. 51-5 at 6.]  As relevant later, Manhattan Life employee LeeAnn Blakey received this training.  [Filing No. 51-5 at 6.]

### C.   Mr. Rent Purchases the Policy for His Wife

In 2003, Mr. Rent purchased the Policy for his wife.  [Filing No. 51-4 at 6-7.]  At that time, the Policy was issued by a different insurer, EMC National Life Company ("EMC").[1]  [Filing No. 55-5 at 4.]

### D.   Mr. Rent Calls EMC to Obtain the Same Policy for Himself

In April 2005, Mr. Rent called EMC about obtaining the same Policy for himself.  [Filing No. 51-4 at 12.]  Mr. Rent spoke to an agent and asked if he "could have the same exact policy

---

[1] The name of the original insurer changed several times.  [S*ee* Filing No. 51-4 at 13.]  However, the name changes are not relevant, so for ease of reference, the Court refers to the original insurer as EMC.

4

that [his] wife had." [Filing No. 51-4 at 13.]  The agent told Mr. Rent that "that was something [EMC] could do." [Filing No. 51-4 at 13-14.]  Mr. Rent's phone call with the agent lasted less than ten minutes and only involved Mr. Rent providing his name and the Policy number and asking if he could buy the same Policy for himself.  [Filing No. 51-4 at 13-14.]  Mr. Rent assumed that EMC would follow up via the mail with an application or papers for him to sign because that was how he applied for and bought the Policy covering his wife in 2003.  [Filing No. 51-4 at 14.]  But Mr. Rent never received anything in the mail after the phone call and did not follow up due to being busy with work and taking care of his family.  [Filing No. 51-4 at 14-15.]

### E.   EMC Sends an Endorsement Letter Showing that the Policy Was Changed to "Family Coverage"

On May 25, 2005, EMC sent Mr. Rent an endorsement letter regarding the Policy ("May 2005 Endorsement Letter").  [Filing No. 51-6.]  The May 2005 Endorsement Letter was a two-page letter addressed to Mr. Rent at his home address and listed on both pages that Pamela Rent, Mr. Rent's wife, was the insured individual under the Policy.  [Filing No. 51-6; *see also* Filing No. 51-4 at 18.]  On the second page, it stated: "In accordance with the request dated April 14, 2005, the policy has been changed from individual to family coverage.  The new premium is $12.40 Weekly." [Filing No. 51-6 at 2.]

According to EMC's Senior Vice President and Chief Technology Officer Kevin Lund, once the May 2005 Endorsement Letter was reviewed internally at EMC, "it would have been sent to EMC corporate offices where postage was applied and the correspondence mailed." [Filing No. 51-8 at 2.]  Mr. Lund testified that, in his review of the May 2005 Endorsement Letter and his familiarity with EMC's mailing procedures in and around 2005, "[t]here [was] no indication that the [May 2005 Endorsement Letter] . . . was not sent to [Mr. Rent]." [Filing No. 51-8 at 1-2.]

Mr. Rent, however, testified that he did not receive the May 2005 Endorsement Letter and had not seen it until this litigation. [Filing No. 51-4 at 18; Filing No. 55-1 at 1-2.] He also testified, in response to a question of whether it was possible that Mrs. Rent had received the May 2005 Endorsement Letter, opened it, and mistakenly misplace it or threw it away, that he could not say for sure whether she did or did not but that "if she were to [have] open[ed] this up, I mean, she's my wife, she would have gave it to me.  She would have said, look, we got this," which did not happen.  [Filing No. 51-4 at 18.]

There is no dispute that the May 2005 Endorsement Letter was properly addressed to the Rent's home address.  [Filing No. 51-4 at 3; Filing No. 51-6.]  There is also no dispute that Mr. Rent later received mail correspondence regarding the policy in January 2015, May 2017, and December 2019 to the same home address as was listed on the May 2005 Endorsement Letter. [Filing No. 51-4 at 30.]

### F.    Another Letter Shows the Insured Individual as Ms. Rent

On April 9, 2008, EMC sent Mr. Rent a letter with an enclosed check for "partial premium we are unable to apply" to the Policy and noted that the Policy was still active and paid through a certain date.  [Filing No. 54-1 at 82.]  The letter identified the Policy number and the insured as "Pamela Rent."  [Filing No. 54-1 at 82.]  The letter does not indicate the type of coverage or otherwise state "family coverage."  [Filing No. 54-1 at 82.]

**EMC**
National Life Company

4095 NW Urbandale Drive
Urbandale, IA 50322-7914
Phone 1.800.232.5818
www.EMCNationalLife.com

April 09, 2008

KURT RENT
5317 RADNOR RD
INDIANAPOLIS IN  46226-2249

POLICY:        CX1129302 - CANCER
INSURED:       PAMELA RENT

Enclosed please find a check totaling $7.45 for partial premium we are unable to apply.
The above policy is active and currently paid to April 10, 2008.

[Filing No. 54-1 at 82.]

### G.   Manhattan Life Buys the Policy from EMC

Later in 2009, Manhattan Life purchased a block of existing, in force policies from EMC, including the Policy at issue.  [Filing No. 51-5 at 4.]  When Manhattan Life bought the policies, the policy documents and underwriting files were transferred from EMC to Manhattan Life. [Filing No. 51-5 at 19.]  But per EMC's practices, only the primary insured and the type of coverage (individual, spouse, or family coverage) were listed in the operating system for each policy.  [Filing No. 51-5 at 21.]  This meant that Mr. Rent was never explicitly entered into the system as a covered insured in EMC's files.  As a consequence, he was not listed as a covered insured in Manhattan Life's files.  [Filing No. 51-5 at 21.]

### H.   Mr. Rent Calls Manhattan Life to Check on the Policy

In August 2010, Mr. Rent called Manhattan Life to check on the Policy and, as recorded in a Manhattan Life file note, was told by a Manhattan Life agent, that "[P]amela not [him]" was the insured individual under the Policy.  [Filing No. 54-1 at 110; Filing No. 51-5 at 20.]  In September 2010, the same file note indicates that another Manhattan Life agent told Mr. Rent that "the policy did not change."  [Filing No. 54-1 at 110; Filing No. 51-5 at 20.]

7

```
adv insd is pamela not kurt            80910    DB     DBURKE
Advised Kurt the policy did not change. No    92910    VH     VHINES
other information was provided          92910    VH     VHINES
```

[Filing No. 54-1 at 110.]

**I.   Certificate of Insurance Shows the Insured as Mrs. Rent**

On January 23, 2015, Manhattan Life mailed a Certificate of Insurance and a cover letter to Mr. Rent that identified Mr. Rent as the "Policy Owner" and the "Insured Person" as Mrs. Rent, and further stated that the "Policy has no beneficiary provision." [Filing No. 54-1 at 83-84.] The Certificate of Insurance and cover letter was sent in response to Mr. Rent asking for verification that the Policy was active after he had to resolve issues regarding his employer's delinquent payment of premium (which was not attributable to any action of Mr. Rent's). [*See* Filing No. 54-1 at 110-112.] Notably, neither document indicates "family coverage." [*See* Filing No. 54-1 at 83-84.] The Certificate of Insurance was signed by Ms. Blakey as "Officer" of Manhattan Life.[2] [Filing No. 54-1 at 84.]

---

[2] Manhattan Life underwent a name change from Central United Life to Manhattan Life sometime between 2016 and 2019, so some documents reference Central United Life, [*see* Filing No. 51-5 at 2; Filing No. 54-1 at 83-83], but the name change is not material and therefore, for ease of reference, the Court consistently refers to the company as Manhattan Life.

## Certificate of Insurance

This is to certify that a request for duplicate policy has been received to replace the original policy which has been lost or destroyed. In lieu of that original policy, this certificate is issued as evidence of coverage in effect as follows:

Policy: 139-CX1129302

Original Issuing Company: EMC

Policy Owner: Kurt Rent

Insured Person: Pamela Rent

Type of Insurance Plan: Cancer policy

Policy Issue Date: May 29, 2003

Current Premium: $43.84, weekly.

Policy paid to November 27, 2014

Additional Benefits or Riders: Intensive Care
                               First Occurrence of Cancer

Current Beneficiary(ies):  Policy has no beneficiary provision.
Primary:  N/A/
Contingent:

Confirmed in Houston, TX, this 23rd day of January, 2015.

Approved:                     CENTRAL UNITED

                              *Lee Ann Blakey*
                              Officer of Company

[Filing No. 54-1 at 84.]

### J.   Mr. Rent Inquires Regarding Why the Policy's Premium Was "Going Up So Much"

Around the time the Policy was reinstated, Mr. Rent asked Manhattan Life "why is this premium going up so much?"  [Filing No. 51-4 at 18.]  A Manhattan Life employee told him that "the reason why was [because] so many people were being diagnosed with cancer, and that cancer had gotten to be so expensive."  [Filing No. 51-4 at 18.]

### K.    Mr. Rent Is Diagnosed with Cancer

Later in 2015, Mr. Rent was diagnosed with cancer.  [Filing No. 51-4 at 17.]  Mr. Rent did

not follow-up with any insurance company to inquire about whether he had a cancer policy or was

covered under the Policy.  [Filing No. 51-4 at 17-18.]  He thought that he was getting his own,

separate policy when he asked back in 2005, and since there was never follow-up about obtaining

his own policy and he was told by Manhattan Life in August 2010 that "[P]amela not [him]" was

the insured under the Policy, he did not think he was covered under any policy.  [Filing No. 51-4

at 17-18; *see* Filing No. 51-4 at 22.]  Mr. Rent therefore did not submit a claim for benefits under

the Policy at that time because he did not know that he had been added to the Policy years earlier.

[Filing No. 51-4 at 26.]

### L.    Manhattan Life Updates Its Business Records

In August 2019, Manhattan Life undertook a project titled the "139 Project" aimed at

updating its business records regarding the policies it bought from EMC that only listed the

primary insured and the type of coverage.  [Filing No. 51-5 at 21.]  As a part of the 139 Project,

Mr. Rent was added to Manhattan Life's "system."  [Filing No. 54-1 at 114; Filing No. 51-5 at 21.]

This event was recorded in a Manhattan Life file note entered on August 19, 2019, stating, "139

Project: Added spouse Kurt to the system."  [Filing No. 54-1 at 114.]

### M.    Mr. Rent Calls Manhattan Life to Cancel the Policy and Learns that He Is Insured Under the Policy

In 2020, Mr. Rent called Manhattan Life to cancel the Policy because Mrs. Rent did not

have cancer and Mr. Rent needed the money that he was paying for the Policy to pay instead for a

secondary health insurance policy for Mrs. Rent.  [Filing No. 51-4 at 20.]  During the call, a

Manhattan Life agent told Mr. Rent that he was covered under the Policy, along with his wife.

[Filing No. 51-4 at 21.]  This was the first time he had heard that he was insured under the Policy,

and he asked the agent to send him a copy of the Policy, for which he had to pay $15.  [Filing No. 51-4 at 21-22.]

When asked in his deposition about how he did not know that he was insured under the Policy, Mr. Rent testified that "there was nothing even in [his] vaguest imagination that would make [him] think [that he] was even covered by [the Policy]" because he bought the Policy for his wife, and even though he had inquired back in 2005 about coverage for himself, he had asked for his own policy and therefore thought he was getting his own policy.  [Filing No. 54-1 at 17.]  "[He] had no idea that [EMC was] adding [him] to this particular policy."  [Filing No. 54-1 at 17.]

### N.   Manhattan Life Mails Mr. Rent a "Specimen Copy" of the Policy Listing Him as an Insured

A letter dated November 25, 2020 was sent to Mr. Rent "in response to [his] request for a copy of the reference[d] policy" and included a "specimen policy" that provided a description of coverage under the Policy.  [Filing No. 54-1 at 85.]  The letter had the Policy number and identified that the insured individual was "Kurt E Rent."  [Filing No. 54-1 at 85.]  This was the first time that Mr. Rent understood and had in his possession a sheet of paper that identified him as insured under the Policy, and that the premium he was paying all these years was covering both him and his wife.  [Filing No. 51-4 at 22-23; Filing No. 51-4 at 35.]  The "specimen copy" is the only document mailed by Manhattan Life to Mr. Rent to have included his name next to the word "insured."  [Filing No. 51-5 at 25.]

The "specimen copy," however, was not accurate and had never been in the Policy's files.  [Filing No. 51-5 at 19.]  The Manhattan Life employee who mailed the letter and "specimen copy" to Mr. Rent created it by typing in Mr. Rent's name, the Policy number, and the weekly premium.  [Filing No. 51-5 at 18-19.]  This employee was not disciplined to or confronted by Manhattan Life about why she mailed an inaccurate document.  [Filing No. 51-5 at 19.]

### O. Mr. Rent Submits Claims Under the Policy and Gets Partially Denied

On January 4, 2021, Mr. Rent submitted claims for cancer treatments going back to 2015, along with a letter explaining that he had never been told that he was insured under the Policy. [Filing No. 54-1 at 24; Filing No. 54-2 at 42-44.] On March 15, 2021, a Manhattan Life claims examiner sent an email to Ms. Blakey as the Chief of Staff and Executive Vice President of Manhattan Life asking her to advise on whether to allow or deny Mr. Rent's claims. [Filing No. 54-1 at 109.] Ms. Blakey responded four minutes later, stating "Ok to allow October, November and December 2019.  Ok to deny the rest of the dates of service as past timely filing." [Filing No. 54-1 at 109.]

Mr. Rent wrote a detailed letter dated June 8, 2021 protesting Manhattan Life's decision and explaining the facts that supported his claim. [Filing No. 51-4 at 26-27; Filing No. 55-1 at 1-6.] Manhattan Life refused to reconsider, and this lawsuit followed. [*See* Filing No. 51-5 at 23.]

### P. This Lawsuit

Mr. Rent filed this lawsuit on September 16, 2022, in Marion Superior Court. [Filing No. 1-2.] Manhattan Life removed the case to this Court on the basis of diversity jurisdiction. [Filing No. 10.] Mr. Rent seeks a declaratory judgment regarding the rights and duties of the parties as they relate to the Policy and asserts claims for breach of contract and breach of the duty of good faith and fair dealing. [Filing No. 1-2 at 4-6.] Manhattan Life moves for summary judgment. [Filing No. 51.]

**IV.**
**D**ISCUSSION

### A. Breach of Contract

Manhattan Life argues that Mr. Rent provided untimely notice and untimely proof of loss, which bars his claims under the Policy. [Filing No. 52 at 14.] It argues that Mr. Rent's attempt to

12

excuse his breach of the Policy's timely notice obligations by claiming that he was unaware that he was added to the Policy in 2005 is untenable. [Filing No. 52 at 14.] It asserts that, under Indiana law, there is a presumption that Mr. Rent received the May 2005 Endorsement Letter because it was properly addressed to his home address and he admitted to receiving other insurance mail there in 2015, 2017, and 2020, and that Mr. Rent has not rebutted that presumption. [Filing No. 52 at 15-16.] Therefore, it argues that Mr. Rent has no excuse for failing to comply with the notice and proof of loss provisions in the Policy. [Filing No. 52 at 16.] Manhattan Life also argues that "late notice of a claim is presumptively prejudicial to an insurer." [Filing No. 52 at 17 (citation omitted).]

In response, Mr. Rent asserts that Manhattan Life's reliance upon the May 2005 Endorsement Letter is misplaced because even if he is deemed to have received it, Manhattan Life still later represented to him that he was not covered and sent documents listing Mrs. Rent as the insured under the Policy. [Filing No. 56 at 3; Filing No. 56 at 15-17.] He argues that Manhattan Life is estopped from enforcing the time limits in the Policy because it prevented his timely performance of the condition when it led him to believe that the Policy did not cover him. [Filing No. 56 at 15.] He contends that precluding Manhattan Life from enforcing the notice requirements "is required because without it, the [P]olicy benefits that [Mr. Rent] actually paid for would be rendered illusory." [Filing No. 56 at 16.] Mr. Rent highlights several of Manhattan Life's "misleading (and, in fact, false) communications to [him]," which prevented Mr. Rent from timely submitting his claims. [Filing No. 56 at 17.] He also asserts that Manhattan Life was not prejudiced by the timing of his claims since it prevented his timely submission, and in any event, that he has rebutted the presumption of prejudice that Manhattan Life relies upon. [Filing No. 56 at 18.]

In reply, Manhattan Life reiterates that Mr. Rent is presumed to have received the May 2005 Endorsement Letter. [Filing No. 58 at 6.] And because he received it, Manhattan Life argues that the Court must conclude that Mr. Rent was on notice of the timing requirements in the Policy. [Filing No. 58 at 6.] It also asserts that its internal records and the post-2005 correspondence do not overcome the plain language of the Policy and "do not create an issue of fact because [Mr. Rent] was aware as of 2005 that he was insured under the Policy." [Filing No. 58 at 9.] Manhattan Life also reiterates that late notice of a claim is presumptively prejudicial to an insurer and that Mr. Rent has not rebutted the presumption of prejudice. [Filing No. 58 at 10-11.]

When the Court exercises diversity jurisdiction over an action, it is "obliged to apply state law to the substantive issues in the case." *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, (1938)). The parties do not dispute that Indiana law governs this action. Accordingly, this Court must "apply the law that would be applied by the Indiana Supreme Court." *Lodholtz*, 778 F.3d at 639. "If the Indiana Supreme Court has not spoken on the issue, [the Court] generally treat[s] decisions by the state's intermediate appellate courts as authoritative, unless there is a compelling reason to think that the state supreme court would decide the issue differently." *Id.*

### 1.  May 2005 Endorsement Letter

Manhattan Life contends that Mr. Rent is presumed to have received the May 2005 Endorsement Letter and therefore knew he was covered and cannot be excused from compliance with the notice and proof of loss requirements. Under Indiana law, evidence of a properly addressed and stamped letter deposited to a post office creates a presumption that the letter was received by the person to whom it was addressed. *Sebasty v. Perschke*, 404 N.E.2d 1200, 1202 (Ind. Ct. App. 1980) (citing *National Live Stock Ins. Co. v. Wolfe*, 106 N.E. 390, 393 (Ind. Ct. App.

1914) and *Home Ins. Co. of N.Y. v. Marple*, 27 N.E. 633, 634-35 (Ind. Ct. App. 1891)).  "While the presumption of receipt is not conclusive, neither is the statement by an interested party of non-receipt.  It is then for the trier of fact to determine from all the evidence and reasonable inferences to be drawn therefrom what occurred."  *Sebasty*, 404 N.E.2d at 1202 (citing *Home Ins. Co.*, 27 N.E. at 634-35).

Here, Manhattan Life puts forth evidence of the presumption of receipt through the affidavit of Mr. Lund, who stated that "[t]here [was] no indication that the [May 2005 Endorsement Letter] . . . was not sent to [Mr. Rent]."  [Filing No. 51-8.]  Mr. Rent, however, testified that he did not receive the May 2005 Endorsement Letter and that, although he could not say for sure whether his wife had received it and threw it away or misplaced it, if she were to have received or opened it, "she would have [given] it to [him] . . . . [and] said, look, we got this," but that did not happen and he did not receive it until this litigation.[3]   [Filing No. 51-4 at 18.]   While neither party's evidence is conclusive, Mr. Rent's testimony is sufficient to rebut the presumption of receipt such that the issue is one for the finder of fact.  *See Sebasty*, 404 N.E.2d at 1202 (finding that when one party has evidence of a properly mailed letter and the other party denies receipt, neither are

---

[3] Manhattan Life reads Mr. Rent's testimony to stand for an admission that he received the May 2005 Endorsement Letter.  [*See* Filing No. 58 at 6.]  The Court, however, cannot not read it that way given the standard of review on summary judgment where the facts are viewed in the light most favorable to Mr. Rent.  *See Darst*, 512 F.3d at 907.  His testimony stands for exactly what he said: that he did not receive it and although theoretically possible that his wife may have received it instead, she did not give it to him as would have been her normal practice if she were to have opened it.  [Filing No. 51-4 at 18.]  Manhattan Life seeks to take Mr. Rent's deposition testimony out of context and impermissibly apply an inference in its favor, neither of which is appropriate.  *See Malin v. Hospira, Inc.*, 762 F.3d 552, 564-65 (7th Cir. 2014) (on summary judgment, warning defense counsel that its misguided approach of cherry-picking isolated phrases from plaintiff's deposition and claiming that the phrases amounted to "admissions" that doomed plaintiff's case was akin to "shenanigans" that did not comport with the parties' duty of candor to the courts and that "[w]hen the testimony [was] read in context," it was "clear that [plaintiff] made no such admissions" and that defendant was actually misrepresenting and mischaracterizing the record).

conclusive proof and that "[i]t is then for the trier of fact" to decide what had occurred); *see also Kellar v. Summit Seating, Inc.*, 664 F.3d 169, 175 (7th Cir. 2011) (on summary judgment, holding that plaintiff's self-serving deposition testimony can create a factual dispute).

Manhattan Life's argument that Mr. Rent does not rebut the presumption ignores Mr. Rent's own admissible testimony, which the Court can and does credit. *See id.*; *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (on summary judgment, holding that the district court erred when it discredited the plaintiff's perfectly admissible evidence of his side of the story just because it was self-serving). Likewise unpersuasive is Manhattan Life's argument that is "implausible" that Mr. Rent did not receive the May 2005 Endorsement Letter because he admitted to receiving Manhattan Life correspondence at the same address in 2015, 2017, and 2020. Not only were those letters sent ten plus years after the May 2005 Endorsement Letter, but the letters were also sent by different companies. The May 2005 Endorsement Letter was sent by EMC, whereas the letters from 2015-2020 were sent by Manhattan Life. [*See* Filing No. 51-4 at 30; Filing No. 51-6.]

In any event, Mr. Rent argues that Manhattan Life's reliance upon the May 2005 Endorsement Letter is misplaced in light of the later false and misleading communications to him that he was not insured under the Policy and that it should therefore be estopped from enforcing the notice requirements because the misleading statements prevented his performance. [Filing No. 56 at 3; Filing No. 56 at 15-17.] The Court thus turns to whether the conduct of Manhattan Life after 2005 prevented Mr. Rent's performance of the notice and proof of loss requirements and what affect it may have on the claims in this case.

### 2. *Prevention of Performance*

Indiana law recognizes that where an insurer prevents its insured from performing a condition under an insurance policy, that performance may be excused, and the insurer estopped

from denying payment based on the failure to satisfy the condition. *Rockford Mut. Ins. Co. v. Pirtle*, 911 N.E.2d 60, 64-67 (Ind. Ct. App. 2009); *see also Acheron Med. Supply, LLC v. Cook Med. Inc.*, 958 F.3d 637, 645-46 (7th Cir. 2020) ("Indiana courts have recognized the prevention doctrine, under which a party's performance may be excused 'where the other party wrongfully prevents that performance.'") (citing *Rogier v. Am. Testing & Eng'g Corp.*, 734 N.E.2d 606, 620 (Ind. Ct. App. 2000)).

Here, there is no dispute that the Policy requires claims to be filed within certain timelines and that some of the claims Mr. Rent filed do not fall within the required timelines. There is also no dispute that Manhattan Life told Mr. Rent in August 2010 that his wife, not him, was the insured under the Policy, [Filing No. 54-1 at 110], and that multiple documents listed only Mrs. Rent as insured, [Filing No. 54-1 at 83-84; Filing No. 54-1 at 82]. Regardless of whether Mr. Rent had received the May 2005 Endorsement Letter, the evidence of Manhattan Life's communications post-2005 are sufficient to create a genuine issue of material fact as to whether Manhattan Life mislead Mr. Rent as to coverage and thus prevented Mr. Rent's compliance with the notice requirements. A reasonable jury may find that Manhattan Life is not entitled to benefit from its inaccurate communications regarding who was insured. *See Rockford*, 911 N.E.2d at 64-67 (judgment in favor of insured affirmed even though insured did not perform a condition precedent under the insurance policy because the insured's performance was prevented by insurer's actions in handling the claim).

Manhattan Life's argument that its communications post-2005 do not overcome the presumption of receipt of the May 2005 Endorsement Letter and the clear language of the notice requirements completely ignores the undisputed substance of its post-2005 communications. Simply put, Manhattan Life fails to own up to the fact—or even recognize—that it told Mr. Rent

that he was not insured, which may very well be a valid excuse in the eyes of a reasonable jury for failing to comply with the notice and proof of loss requirements.[4]

### 3. Prejudice

Lastly, Manhattan Life argues that Mr. Rent breached the Policy by filing his claims late and that "late notice of a claim is presumptively prejudicial to an insurer."  [Filing No. 52 at 17 (citation omitted).]  This argument, however, rests on the assumption that Mr. Rent's notice was indeed late.  But as explained above, whether Mr. Rent's submission was late (resulting in his breach) or excused (resulting in Manhattan Life's breach) is a question for the finder of fact.  Thus, this argument is putting the cart before the horse and its outcome is inappropriate until the finder of fact determines the foundational question of whether notice was late or excused.

To summarize, a motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  Here, a trial is necessary because there is a genuine dispute as to whether Mr. Rent received the May 2005 Endorsement Letter and whether Manhattan Life's post-2005 communications prevented Mr. Rent from understanding that he was insured, thus precluding Manhattan Life from denying his claims based on timing.  The

---

[4] In a footnote in his response brief, Mr. Rent states: "[G]iven the undisputed record of communications to [Mr. Rent] by [Manhattan Life], this Court could find that Mr. Rent is entitled to summary judgment pursuant to Fed. R. Civ. P. 56(f)" on this issue.  [Filing No. 56 at 16 n.4.]  The Court notes that this method is not the proper method for moving for cross-summary judgment.  *See* Fed. R. Civ. Pro. 7(b) ("A request for a court order must be made by a motion.")  In any event, "[t]he Court does not deem information contained in footnotes as argument. . . . [so] counsel should include all argument in the body of the brief." *Practices & Procedures*, https://www.insd.uscourts.gov/sites/insd/files/JMS%20PRACTICES%20AND%20PROCEDUR ES.pdf (last visited May 17, 2024).

Court **DENIES** Manhattan Life's Motion for Summary Judgment, [Filing No. 51], as to the breach of contract claim.[5]

### B. Breach of the Duty of Good Faith and Fair Dealing

Although Manhattan Life argues for summary judgment as to all claims, the only time it mentions Mr. Rent's claim for breach of the duty of good faith and fair dealing is in its introduction paragraph in its brief in support of its motion for summary judgment. [Filing No. 52 at 4-6.] It makes no argument regarding the merits of the claim. [*See* Filing No. 52.] Instead, it appears to argue that there was no breach of contract, and therefore, there cannot be a breach of the duty of good faith and fair dealing. [*See* Filing No. 52 at 1-3.]

In response, Mr. Rent argues that there is ample evidence to support his claim for breach of the duty of good faith and fair dealing, including: knowing that it had previously told Mr. Rent that he was not insured under the Policy; the inaccurate Policy document sent to Mr. Rent on November 25, 2020; and the four-minute investigation by Ms. Blakey before denying claims under the notice and proof of loss requirements. [Filing No. 56 at 20-23.]

In reply, Manhattan Life argues that Mr. Rent's arguments for breach of the duty of good faith and fair dealing "lack factual support in the record." [Filing No. 58 at 11.] It asserts that Mr. Rent's arguments "boil down to the false contention that communications from [Manhattan Life] were unclear and the [specimen policy] presented to him at his request was forged," both of which lack factual support. [Filing No. 58 at 11-12.]

---

[5] The parties do not discuss Mr. Rent's claim for declaratory judgment. To the extent that Manhattan Life moved for summary judgment on the declaratory judgment claim, the Court **DENIES** Manhattan Life's Motion for Summary Judgment, [Filing No. 51], as to the declaratory judgment claim because, as explained, the rights of the parties are dependent upon the finder of fact's conclusion as to whether Mr. Rent received the May 2005 Endorsement Letter and the effect of Manhattan Life's post-2005 communications.

Indiana law recognizes a cause of action for an insurer's breach of its duty to deal with its insured in good faith. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). This duty of good faith includes, but is not limited to, "refrain[ing] from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of [its] claim." *Id.*; *see also Monroe Guar. Ins. Co.*, 829 N.E.2d at 976 ("[A]n insurer's duty to deal in good faith with its insured encompasses more than a bad faith coverage claim"). The duty is not necessarily breached merely because an insurer denies a claim, even if it is later determined that the insurer breached the contract. *Erie Ins. Co.*, 622 N.E.2d at 520. The duty is also not necessarily breached by a lack of diligent investigation. *Id.* Rather, the duty is breached when the insurer "denies liability knowing that there is no rational, principled basis for doing so." *Id.*

A finding of bad faith "requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Monroe Guar. Ins. Co.*, 829 N.E.2d at 977 (internal quotations and citation omitted). Intent is a factual issue that can be proved by circumstantial evidence. *Gooch v. State Farm Mut. Auto. Ins. Co.*, 712 N.E.2d 38, 41 (Ind. Ct. App. 1999) ("[A] final determination of the significance of all of the evidence presented by [the insured] is a question for the jury").

As a preliminary matter, although it is possible for an insurer to erroneously deny or limit a claim without breaching its duty of good faith, the inverse is not true. In other words, in order for Mr. Rent to prevail on a claim that Manhattan Life breached its duty of good faith and fair dealing by issuing a claim decision that it knew was irrational or unfounded, Mr. Rent needs to establish that Manhattan Life's denial of the claims was a breach of the Policy, and that Manhattan Life had the requisite knowledge and intent to act in bad faith. *See Erie Ins. Co.*, 622 N.E.2d at

520; *Monroe Guar. Ins. Co.*, 829 N.E.2d at 977.  Mr. Rent has put forth enough evidence from which a reasonable jury could conclude that Manhattan Life's denial of his claims was a breach of the Policy, so the Court proceeds to evaluate whether Mr. Rent has put forth evidence from which a reasonably jury could conclude that Manhattan Life acted with the requisite knowledge and bad faith.

As for this showing, Mr. Rent has presented evidence that could lead a reasonable jury to conclude that Manhattan Life acted in bad faith during the handling of his claim, including but not limited to evidence that:

- The April 2008 letter that identified "Pamela Rent" as the "Insured" with no indication of "family coverage", [Filing No. 54-1 at 82];

- Manhattan Life's August 2010 communication to Mr. Rent that his wife, not him, was the insured individual under the Policy, as evidenced by an undisputed Manhattan Life file note, [Filing No. 54-1 at 64-65; Filing No. 54-1 at 110], which Manhattan Life fails to confront in its Motion for Summary Judgment, [*see* Filing No. 52; Filing No. 58];

- The January 2015 Certificate of Insurance sent to Mr. Rent that listed "Insured Person: Pamela Rent" with no indication of "family coverage", [Filing No. 54-1 at 84];

- The inaccurate specimen policy—which was the only document ever mailed by Manhattan Life that showed Mr. Rent's name next to the word "insured"—that was created for Mr. Rent to show him that he was indeed insured under the Policy after he asked for a copy of the Policy because he had never seen a document indicating that he was insured, [Filing No. 51-4 at 22-23; Filing No. 51-4 at 35; Filing No. 51-5 at 18-19; Filing No. 51-5 at 25; Filing No. 54-1 at 85]; and

- Ms. Blakey's four-minute investigation into whether accept or deny Mr. Rent's claims, [Filing No. 54-1 at 109.]

Viewed in the light most favorable to Mr. Rent, this is sufficient evidence for a reasonable jury to conclude that Manhattan Life breached its duty of good faith and fair dealing, especially when its employees are trained on the duty of good faith and fair dealing.  [*See* Filing No. 51-5 at

6.] Manhattan Life's argument that Mr. Rent's arguments on this claim "boil down to the false contention that communications from [Manhattan Life] were unclear" and "lack factual support in the record" exhibits a spectacular inability to own up to the undisputed evidence of its inconsistent communications. The evidence here is enough to create a genuine issue of material fact, warranting the denial of summary judgment. Accordingly, the Court **DENIES** Manhattan Life's Motion for Summary Judgment, [Filing No. 51], as to the breach of duty of good faith and fair dealing claim.

## V.
### CONCLUSION

For the foregoing reasons, the Court:

- **DENIES** Manhattan Life's Motion for Oral Argument and Hearing, [59]; and

- **DENIES** Manhattan Life's Motion for Summary Judgment, [51].

The Court requests that the Magistrate Judge confer with the parties as soon as practicable to address the possibility of an agreed resolution prior to the September 30, 2024 trial.

Date: 5/17/2024

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**

22